IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEJANDRA DIEHL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 4018 |
| v. ) | |
| ) | Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff Alejandra Diehl seeks reversal and remand of the Commissioner's decision denying her Social Security benefits (doc. # 19: Pl.'s Br. in Supp. of Summ. J.). The Commissioner has filed a response asking the Court to affirm its decision (doc. # 26: Def.'s Resp.). For the reasons that follow, we grant Ms. Diehl's motion to remand.

### I.

Ms. Diehl filed her applications for Social Security benefits on May 18, 2011, alleging she became disabled on August 12, 2010 (R. 172-73, 181-83). Her date last insured was December 31, 2015 (R. 456). On August 9, 2012, after a hearing, an administrative law judge ("ALJ") denied Ms. Diehl's application for benefits in a written decision (R. 24-40), and the Appeals Council denied her subsequent request for review (R. 1-8). After exhausting her administrative remedies, Ms. Diehl sought review in federal district court. In an order dated March 12, 2015, the court reversed and remanded the ALJ's decision (R. 552-55). A different

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2]On May 17, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 8).

ALJ held a hearing on December 2, 2015, and on January 6, 2016, the ALJ denied Ms. Diehl's applications for benefits, finding that she was not disabled from her alleged onset date through the date of the decision (R. 456-65). Ms. Diehl did not file exceptions with the Appeals Council and the Appeals Council did not assume jurisdiction over the case, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.984.

## II.

On July 26, 2010, at age 34, Ms. Diehl slipped and fell at work (R. 326). Then and now, Ms. Diehl has lived with her sister and her only child, who was two years old at the time of her fall (R. 49). Her education stopped after sixth grade (R. 67), and she has not worked since 2010 (R. 458). She is approximately 5'4" tall, and her weight increased from 140 in 2010 to 190 pounds in 2015 (R. 236, 775). Ms. Diehl does not speak English and used an interpreter to communicate in the agency proceedings.

In August 2010, at her first medical visit after her fall, Ms. Diehl went to the emergency room ("ER") complaining of lower back pain (R. 339). She was prescribed Naprosyn and Skelaxin (a muscle relaxant), and diagnostic imaging showed "minimal arthritic change" in her back (R. 339-41). Ms. Diehl visited Hinsdale Orthopaedics in September and October 2010, and she was diagnosed with L4-L5 and L5-S1 central disk herniation, an L4-L5 annular tear, and sacroiliitis (inflammation of the sacroiliac joints at the base of the spine) (R. 324-26, 331). Ms. Diehl was prescribed Norco for her pain (*Id.*).

On July 1, 2011, Kimberly Middleton, M.D., performed a 35-minute consultative examination ("CE") of Ms. Diehl (R. 349). Ms. Diehl reported excruciating pain that limited her activities of daily living ("ADLs"), and she was "unable to cooperate[] with much of the exam due to pain" (R. 349-50). Ms. Diehl had marked tenderness and spasm in her lower back and

2

sacrum, pain upon raising her leg, and limited range of motion ("ROM"), flexion and extension (R. 351). She had an antalgic gait and was unable to squat and heel and toe walk due to pain (*Id.*). Dr. Middleton concluded that "[t]he claimant appears disabled and would have extreme difficulty performing work at this time" (*Id.*).

On July 14, 2011, a state agency medical consultant filled out a physical residual functional capacity ("RFC") assessment opining that Ms. Diehl could occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; stand, walk or sit about six hours in an eight-hour workday; and had unlimited ability to push and pull (R. 357). That decision was affirmed on reconsideration on August 3, 2011 (R. 378).

Ms. Diehl next went to the ER in March 2012 complaining of severe and worsening back pain (R. 416, 430). She had mild to moderate tenderness in her back, and she was prescribed Naprosyn, Flexeril (a muscle relaxant), Norco and Valium (R. 423, 433, 436). Imaging showed mild bulges at L4-5 and L5-S1 with mild facet joint enlargement and possible mild bilateral neural foramina narrowing (spinal nerve compression) (R. 426).

On July 12, 2012, at her first administrative hearing, Ms. Diehl testified that she stopped going to physical therapy and seeing a doctor because she could not afford it and it did not help her pain (R. 49-50). She was referred to a neurologist (R. 424), but she never went (R. 50). Ms. Diehl took over the counter pain medication and used pain patches when she ran out of prescription medication (R. 51). Ms. Diehl testified that she has good days and bad days. Sometimes her back hurt so much she could not get out of bed, stand for more than five to ten minutes, or sit for more than 30 minutes; at other times, her pain was less severe and she could shower, dress, do laundry and dishes, make lunch, take the garbage out and take care of her son (R. 56-62). Ms. Diehl testified that she has received epidural shots, which helped ease her pain,

3

but even on a good day she could engage in activity for no more than an hour and a half before needing to lie down (R. 56-57, 69). An ALJ issued the first opinion denying her benefits the next month, in August 2012.

Ms. Diehl next sought treatment for back pain in May 2013 in a visit to the ER. Imaging results from that visit showed only mild or minimal degenerative changes (R. 810, 813). She had some tenderness in her back but normal strength in her legs, and she was prescribed Norco (R. 817). Eighteen months later, on November 4, 2014, Ms. Diehl visited a medical clinic for the first time, complaining of "multiple concerns" including back pain, fatigue, and abnormal weight gain (R. 780). At that visit, "overall findings were normal, except with low back muscle spasm, full ROM but with some pain, normal DTRs [deep tendon reflexes] and LE [lower extremity] strength and normal gait" (R. 782).

In the first half of 2015, Ms. Diehl sought medical treatment at the same clinic for various ailments that did not include back pain (*see* R. 787-94). On July 22, 2015, however, Ms. Diehl returned to the ER complaining of increased, constant pain in her neck, shoulders and lower back, which worsened with movement (R. 811-12). Ms. Diehl visited MK Orthopaedics from August through November 2015 for treatment, and she was prescribed Mobic (for rheumatoid arthritis) and Cyclobenzaprine (for muscle spasms) and advised to take Flexeril -- but only at night, because it made her drowsy (R. 775-79). She also visited her medical clinic during this time; her treatment providers observed that Ms. Diehl had tenderness in her paraspinal muscles, muscle spasm, and pain with twisting, bending, and straight leg raising (R. 801-03).

### III.

After the case was remanded by the district court, a different ALJ held a hearing on December 2, 2015. Ms. Diehl testified that she had to stand at her previous jobs, but her back

pain now prevented her from standing that long (R. 484-85). She stated that she had received injections and pain medication, which relieved the pain "a little bit," but the pills made her sleepy and she stopped getting injections due to her diabetes (R. 485-89). She stopped physical therapy because it did not help relieve her pain (R. 486). The ALJ questioned why Ms. Diehl did not seek insurance under the Affordable Care Act, but ultimately answered his own question by noting that Ms. Diehl received an insurance card on December 1, 2014 (R. 486-87, 490).

Ms. Diehl testified that she cooked, washed dishes, did laundry, vacuumed and cleaned the house, but that these activities hurt her back and tired her out (R. 491-93). She testified that she could stand for about one and a half to two hours but then had to lie down for 25 to 30 minutes (R. 495); she lied down at least three times per day (R. 499). Ms. Diehl said that she could sit "for a long period of time," but if she sat too long she developed lower back pain that shot down her leg (R. 495, 497). Ms. Diehl testified that her pain "comes and goes . . . up and down . . ." (R. 496).

The ALJ presented the vocational expert ("VE") with numerous hypotheticals, including that of a sedentary individual who would need to stand at her workplace for five to ten minutes (still on-task) after sitting for two hours (R. 505). The VE explained that such jobs were not defined in the DOT, but based on her 20 years of experience, she believed that this sit-stand limitation would not affect any of the sedentary jobs available (*Id.*). However, if the individual had to take three 35-minute breaks, this would exclude all jobs (R. 505-06).

## IV.

On January 6, 2016, the ALJ issued a decision finding Ms. Diehl was not disabled. At Step 1, the ALJ stated that Ms. Diehl had not engaged in substantial gainful activity since August 12, 2010 (R. 458). At Steps 2 and 3, respectively, the ALJ found that Ms. Diehl had the severe

5

impairments of degenerative disc disease of the lumbar spine, sacroiliitis and obesity, but that none of these impairments met or medically equaled a Listing (R. 458-59). The ALJ assigned Ms. Diehl an RFC to perform sedentary work, "except that after sitting for 2 hours, she would need to stand at her station for 5 to 10 minutes while still doing the job," with some additional postural limitations and an allowance for her inability to communicate in English (*Id.*).

The ALJ reviewed Ms. Diehl's allegations of pain and functional limitations but found that her testimony about their extent was not credible because "[t]he diagnostic images as well as the physical examinations, which repeatedly note a normal gait and normal strength, show mostly minimal findings" (R. 462). In addition, the ALJ stated that Ms. Diehl's treatment records do not support her alleged need to lie down during the day, and that Ms. Diehl acknowledged that "medications help with her symptoms" (*Id.*). Also, the ALJ noted that Ms. Diehl testified at the hearing that she "performed a wide variety of activities of daily living" (R. 460, 462).

The ALJ then assessed the medical opinions in the record, which included only Dr. Middleton's CE and the state agency RFC opinions. The ALJ gave "little weight" to Dr. Middleton's opinion because she "did not provide a functional analysis of the claimant's abilities to support her conclusion that the claimant would have 'extreme difficulty performing work'" (R. 462-63). The ALJ also stated that Dr. Middleton's conclusion was inconsistent with her finding that Ms. Diehl had normal use of her upper extremities (R. 463). The ALJ also found that Dr. Middleton's "extremely limiting opinion" was inconsistent with "an overall lack of evidence to support greater limitations" and "[t]he diagnostic images as well as the physical examinations documented in the claimant's treatment records, both prior to an subsequent to Dr. Middleton's one-time consultative examination, [which] show mostly minimal findings" (*Id.*).

6

The ALJ gave "some weight" to the state agency opinions that Ms. Diehl could perform light work (R. 463). The ALJ explained that "while these opinions were reasonable based on the evidence available at the time they were given, the evidence received at the hearing level, including the claimant's testimony, shows that the claimant is more limited in her functional abilities, which has been provided for in her residual functional capacity" (*Id.*).

Ultimately, the ALJ found that Ms. Diehl was unable to perform her past relevant work as a warehouse worker, but that other jobs existed in significant numbers in the national economy that she could perform (R. 463-64).

## V.

We review the ALJ's decision deferentially to determine if it was supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). Plaintiff argues that remand is necessary here because the ALJ did not properly weigh Dr. Middleton's and the state agency opinions and failed to adequately support the RFC. We agree.

*First*, because the ALJ rejected or discounted the only medical opinions in the record (giving "little weight" to Dr. Middleton's findings and only "some weight" to the state agency medical consultants who opined Ms. Diehl could perform light work), it was incumbent upon the ALJ to point to some other evidence in the record to support his conclusion that Ms. Diehl could

7

perform sedentary work with a sit-stand option. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (holding that where medical report did not support the RFC which the ALJ gave the claimant, "[t]he ALJ needed to explain how she reached her conclusions about [the claimant's] physical capabilities"). However, the ALJ failed to do so, and "[t]he rest of the record simply does not support the parameters included in the ALJ's residual functional capacity determination." *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). "No physician testified—no medical records [re]vealed—that [Ms. Diehl] has the residual functional capacity ascribed to h[er] by the administrative law judge." *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013). Thus, the ALJ failed to build the requisite "logical bridge" between the evidence and his conclusion.

*Second*, the ALJ did not adequately support his decision to reject Dr. Middleton's opinion. "[R]ejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). In support of his decision, the ALJ pointed out that imaging reports showed "minimal findings," and that overall, Ms. Diehl had a "normal gait." This explanation was inadequate, as it ignored the evidence in the record that Ms. Diehl had spasms, pain and tenderness in her back, as well as some reduced range of motion and disk herniation and inflammation -- sometimes at the same visits where her gait was normal. This was error, as "[a]n ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). The ALJ's explanation here did not suffice to build the requisite logical bridge between the evidence and the ALJ's conclusion.

On remand, we strongly suggest that the ALJ order a new state agency consultative examination and opinion for Ms. Diehl. While a claimant bears the burden of proving disability, "[a]n ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) (internal quotations omitted); *see also Scott*, 647 F.3d at 741 (where the evidence was insufficient to support the ALJ's conclusion, "it was her responsibility to recognize the need for additional medical evaluations"). An ALJ may order a consultative examination when "the evidence as a whole is insufficient to support a determination or decision on [the] claim," including where "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [her] ability to work." 20 C.F.R. § 416.919a(b)(4). In this case, the ALJ was left without adequate support for his RFC opinion because he gave only some weight to the state agency opinions, reasoning that unspecified later medical and testimonial evidence showed Ms. Diehl's condition had grown more limited in the four-plus years since those opinions were rendered (R. 463). And, the ALJ rejected Ms. Diehl's only physical consultative examination, which also occurred more than four years before her second hearing before the ALJ. In these circumstances, "the ALJ on remand should strongly consider ordering another medical evaluation to determine" Ms. Diehl's physical functional limitations. *Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013).

## CONCLUSION

For the reasons stated above, we grant plaintiff's request for reversal and remand (doc. # 19), and remand this case for further proceedings consistent with this opinion. The case is terminated.[3]

ENTER:

Sidney I. Schenkier
United States Magistrate Judge

Dated: June 20, 2017

---

[3] We reject Ms. Diehl's alternative request for a reversal and an outright award of benefits. "An award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Here, factual issues have not yet been resolved, and we are not prepared to say that Ms. Diehl must inevitably be found disabled. We leave that determination to the ALJ on remand.